**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

Case No.: 1:18-cv-25095-XXXX

EDDIE BODDEN, FELIZ TERRERO,
FRANCISCO ORTEGA, MARCELINO
SUSANA, VICTOR LACAYO LOPEZ, and
JULIO BRINGUEZ,

    Plaintiffs

vs.

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

    Defendant
_____/

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT [DE 25]

Defendant, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA (hereinafter "Travelers"), by and through undersigned counsel, hereby files this Reply in Support of its Motion to Dismiss Plaintiffs' First Amended Complaint, [DE 25], and in support thereof, states as follows:

### I.  Plaintiffs' First Amended Complaint Fails to State a Claim

In their First Amended Complaint [DE 17], Plaintiffs state that they were the crew members of the tug, *Billy G*, and that Suncoast Shipping, LLC (hereinafter "Suncoast") "operated, controlled, managed, and maintained [the *Billy G*]…through management, joint venture and/or bareboat charter agreements." [DE 17 at ¶¶ 3, 11]. Later, in their Response, [DE 26], Plaintiffs claim that the *Billy G* was "leased and operated" by Suncoast. The First Amended Complaint goes on to also state that Suncoast was not the owner of the tug. [DE 17 at ¶12]. However, Plaintiffs fail to plead and/or explain how and why non-ownership of the tug, if discoverable by Travelers, supports a breach of contract claim. It does not.

To be sure, Travelers obtained a default order and judgment because Suncoast, the charterer of the *Billy G*, misrepresented its ownership interest to Travelers when in fact it had none. [DE 15-

2]. Plaintiffs fail to allege in their First Amended Complaint or Response why there would be hull protection and indemnity insurance coverage available to them – non-owners and non-charterers of the tug, *Billy G*. These undisputed facts alone warrant dismissal of Plaintiff's Amended Complaint in its entirety.

To continue, in their First Amended Complaint, [DE 17 at ¶ 38, Exhibit 2], Plaintiffs acknowledge a reservation of rights letter was issued, that they were aware of it, and that Suncoast was being defended under it. This was not a wrongful refusal to defend, as in *Chomat v. Northern Insurance of New York*, 919 So.3d 535 (Fla. 3d DCA 2006) (explaining *Coblentz* agreement against an insurer requires a plaintiff prove coverage, wrongful refusal to defend, and that the settlement was reasonable and made in good faith). Here, coverage is lacking, no wrongful refusal to defend is pleaded, and the settlement was purportedly made after Suncoast refused to defend itself in the state court crew action and the declaratory judgment action, such that this Defendant is entitled to challenge the bona fides of the Consent Settlement Agreement. *See* [DE 15-3, Exhibit C] (the Consent Settlement Agreement).

Plaintiffs erroneously state that Defendant fails to address the elements of the breach of contract claims. However, the elements of a breach of contract action <u>include</u> a valid contract. If the insurance policy is void *ab initio* due to Suncoast's material misrepresentation on the application for coverage, then there is no valid contract for Plaintiffs to claim coverage under. In other words, coverage never existed. Neither are Plaintiffs judgment holders by virtue of their Consent Settlement Agreement with Suncoast, as Suncoast was administratively dissolved at the time of the agreement, and the Consent Settlement Agreement itself, as pled, states that it constitutes a lien against Suncoast – not a judgment.

**II.     The Travelers Policy is an Indemnity Policy, not a Liability Policy**

In their First Amended Complaint, Plaintiffs did not assert that this Protection & Indemnity Policy is in any way "ambiguous" or that this Court "should likewise construe the ambiguities of the Travelers' policy in favor of coverage a liability policy"; Plaintiffs only did this in their Response to Travelers motion to dismiss. *See* [DE 26 at pg. 5].

This is an indemnity policy, not a comprehensive general liability policy. According to Fla. Stat. §624.607, "marine insurance" is defined as, inter alia, "marine protection and indemnity insurance." *See Wallach v. Steamship Mutual Underwriters Association (Bermuda) Limited*, 2007 WL 9710927 (S.D. Fla. 2007). That is what is attached to the First Amended Complaint, a hull

policy on the tug and a protection and indemnity policy. Separate premiums were charged for both. Marine insurance includes marine protection and indemnity insurance, meaning insurance against, or against legal liability of the insured for, loss, damage, or expense arising out of, or incident to, the ownership, operation, chartering, maintenance, use, repair, or construction of any vessel, craft, or instrumentality in use in ocean or inland waterways, including liability of the insured for personal injury, illness, or death or for loss of or damage to the property of another person. Fla. Stat. §624.607(a)(b). The terms of this policy are unambiguous and demonstrate that this policy is an indemnity policy which, therefore, falls within the Fla. Stat. §627.401 exception to direct actions against insurers.

   a. *DaCosta* analysis

The Supreme Court of Florida has stated the distinction between a liability policy and an indemnity policy to be as follows: Under a liability policy, the insurer is liable for "damages for bodily injury or property damage for which any covered person becomes legally liable, up to the applicable policy limits." *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 279 (Fla. 1985). In other words, the insurer must pay damages if the insured is found liable. Under an indemnity policy, on the other hand, the insurer is liable only for "loss *actually paid* the injured party by the insured." *DaCosta v. General Guaranty Ins. Co.*, 226 So.2d 104, 105 (Fla. 1969). (Emphasis added). Thus, actual payment by the insured is a condition precedent to any obligation on the part of the insurer. "'The presence of a 'no action' clause providing that no action will lie against an insurer unless brought for losses actually sustained and paid in money is generally indicative of an indemnity rather than a liability policy." *Weeks v. Beryl Shipping, Inc.,* 845 F.2d 304, 306 (11th Cir. 1988)

Importantly, *DaCosta* stated that the presence of a "no action" clause is "generally indicative" of an indemnity policy.[1] So, a "no action" clause alone is not in and of itself wholly dispositive, but it serves as a controlling factor. Travelers' Policy in the present case contains a "no action" clause:

> **No action shall lie against the Assurer** for the **recovery of any loss sustained by the Assured** unless such action is brought against the Assurer within one year after the final judgment or decree is entered in the litigation against the Assured, or in

---

[1] Defendant was not inferring that the policy limitation period was anything else than Florida law; it was distinguishing the points raised in *DaCosta*. *See Dacosta*, 226 So.2d at 106-107 (the presence of a no action clause is generally indicative of an indemnity policy).

> case he claim against the Assurer accrues without the entry of such final judgment or decree, unless such action is brought within one year from the date of payment of such claim.

[DE 17-1 at pg. 41 of 69] (Emphasis added).

Contrary to Plaintiffs' assertion, Defendant's Motion to Dismiss cited *DaCosta*—twice—to demonstrate examples of factors that that court analyzed when deciding whether a policy is of liability or indemnity. This factor requires the insured to first 'sustain' a loss, i.e. pay, as cited in Travelers' Motion to Dismiss. [DE 26]. This clause is the hallmark of an indemnity policy. *Lake*, in contrast, was a mechanics lien case in which the insurer denied liability and refused to defend the claim or pay the judgment after writing separate letters of indemnity.[2] There is no such narrow construction of indemnity in the present case. Travelers defended their insured under a reservation of rights, and afterwards received a default judgment, in effect voiding the policy *ab initio*.

"In *DaCosta*, the Supreme Court of Florida state[d] that 'policy provisions requiring notice of accidents and claims, defense of suits by the Assurer, and prohibiting settlement by the Assured, usually indicate a liability rather than indemnity type of policy.' As should be readily apparent, appellants' reliance on this language is misplaced; nothing in the P & I policy *requires* that London defend suits against the insured or *prohibits* the insured from settling with the injured party." *Weeks*, 845 F. 2d at n. 6. (Emphasis in the original). The same holds true for Travelers' policy in the instant case.

### b. SP-23 Form is Standard Maritime Protection and Indemnity

Plaintiffs argue in their response that the policy was one of liability, and not indemnity. However, this is neither a homeowner's insurance policy, nor an automobile insurance policy. It is one of maritime protection and indemnity, which are not subject to policy form approval like traditional liability policies.

"Federal courts have recognized general principles to marine insurance policies." *Continental Insurance Co. v. L & L Marine Transportation, Inc*., 2016 WL 301681, at *3 (E.D. La. 2016). The SP-23 is a standard maritime insurance form of a protection and indemnity policy. *See Gabarick v. Laurin Maritime (America), Inc*., 650 F.3d 545, 554 (5th Cir. 2011); *Insurance Co. of North America v. Board of Com'rs of Port of New Orleans*, 733 F.2d 1161, 1165 (5th Cir.

---

[2] *Lake* is not controlling authority. Another district court's decision is not binding. *McGinley v. Houston*, 361 F. 3d 1328, 1331 (11th Cir. 2004).

1984); *Taylor v. Lloyd's Underwriters of London*, 1994 WL 118303, at *7 (E.D. La. 1994) ("The scope of coverage under the P&I policy is determined by the standard terms and conditions set forth in the standard P&I policy, Form SP-23."); 7A *Benedict on Admiralty* §2.01 at 2-3 (Rel.28-7/82).

As a rule, "P & I policies do not ordinarily create a duty to defend and are indemnity policies, not liability policies." *Gabarick v. Laurin Maritime (America), Inc*., 650 F.3d 545, 552-53 (5th Cir. 2011). The Fifth Circuit "recognizes the distinction between indemnity and liability policies and acknowledges that the former typically does not create a duty to defend." *Continental Insurance*, supra, at *3. "Settled case law supports the limited contours of liability coverage arising from marine insurance policies which clearly emphasize, as does SP-23, that indemnification extends **to the assured only as 'owner of the vessel named herein'** for a cost or expense of 'removal of the wreck of the vessel named herein' and states, 'each vessel deemed a separate insurance'." *Id.* (Emphasis added.)

"These explicit policy provisions leave no room for doubt or ambiguity as to who is the insured, in what capacity he is insured, and for which losses he will be indemnified. It would therefore be improper to construe these policy provisions in favor of an assured's position under the rubric of affording him the benefit of resolving doubtful coverage against the insurer." *St. Paul Fire and Marine Ins. Co. v. Vest Transp. Co., Inc*., 666 F.2d 932, 941 (5th Cir. 1982). "The consensus of the federal cases, unanimous so far as our research reveals, is that in P&I protection afforded by underwriters under terms or language similar to SP-23 the assured **must be liable as owner of the insured vessel**; liability in any other capacity is irrelevant, as is the question of whether the same person is the owner of the insured innocent vessel and the negligent vessel. Settled case law supports these propositions." *Id.*, at 942. (Emphasis added). *See further, Schuck v. Habicht*, 672 So. 2d 559, 561 (Fla. 4th DCA 1996) (explaining how an indemnity policy became a liability policy as a result of hybridizing, because it extended cover for third party liability). That court also noted that the insurance policy in *Schuck* contained a no action clause, the hallmark of an indemnity policy. *Id*.

**III.     Plaintiffs' Claims are Barred by Res Judicata; the Policy was Null and Void**

The *Helt* case that Plaintiffs rely upon in their response involved an automobile liability insurance policy – not a policy of indemnity – and certainly not a policy of marine protection and indemnity: "The policy of insurance here was one insuring against liability, not a contract for

reimbursement or indemnity, and the insurer's liability became fixed when liability attached to the insured." *Helt*, at 889.[3]

## IV. Plaintiffs do not have Standing

The cases that Plaintiffs cite are not on point. Travelers is a stranger to the Consent Settlement Agreement, not a party. Greenwich Association, Inc. was a party to their Consent Settlement Agreement *in Greenwich Ass'n, Inc. v. Greenwich Apartments, Inc.*, 979 So. 2d 1116 (Fla. 3d DCA 2008). This analysis is only for parties to the judgment, not third parties. This argument is not applicable to Defendant. Furthermore, Travelers—unlike the nonparty in *Gallagher v. Dupoint,* 918 So. 2d 342, 347 (Fla. 5th DCA 2005)—is not seeking to <u>enforce</u> a consent settlement agreement; rather, Travelers seeks to challenge its legality. That is entirely different. Once again, the cases that Plaintiffs rely upon in their Response are not on point and can be easily distinguished from the instant case. *Gallagher* itself holds that "To enforce a consent judgment such as the present one, Dupont must demonstrate: (1) coverage, (2) a wrongful refusal to defend, and (3) that the settlement was reasonable and made in good faith." *Gallagher*, 918 So. 2d at 349. Additionally, "one who is not a party to a settlement agreement cannot be bound by its terms, but an exception applies where an insurer wrongfully refuses to defend its insured." *Id*. Again, Plaintiffs' argument is not applicable to the instant case.

Plaintiffs point out that Suncoast is currently in good standing with the Florida Department of Corporations, having been reinstated on March 1, 2019. However, this does not address the fact that at the time of the Consent Settlement Agreement, Suncoast was administratively dissolved and was not in the process of "winding up its affairs" when it entered into this agreement with the Plaintiffs. Plaintiffs argue that it is irrelevant to question whether Suncoast had the capacity to enter into such an agreement. Why can't Suncoast's capacity to enter into the consent settlement agreement be questioned by Travelers? Why is it irrelevant? Plaintiffs offer no answer to these questions. The other cases which Plaintiffs cite all include parties that are legally able to enter into contracts, which as Plaintiffs argue, are the basis of Consent Settlement Agreements. If a party is a limited liability company that is administratively dissolved and has wound up its activities and affairs at the time at which the contract was entered, it cannot validity enter into contract. See §607.1405; 607.1421. Fla. Stat.

---

[3] *Helt* is not controlling authority. Another district court's decision is not binding; nor is this a final order. *McGinley*, 361 F.3d at 1331.

Plaintiffs fail to bring to the Court's attention that there are a multitude of different ways in which to collaterally attack a judgment, and that only some of those ways are by the time-bar methods under state law. Other ways to collaterally attack a judgment, however, have no such time limitation. These other ways, which are not time-barred, include: "(4) that the judgment or decree is void; or (5) that the judgment or decree has been satisfied, released or discharged, or a prior judgment or decree upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgement or decree should have prospective application." Fla. R. Civ. P. R. 1.540(b). Additionally, the Plaintiffs herein, now apparently claiming third-party beneficiary status under a liability policy, cannot have this Court ignore their "assignee" status under the same settlement agreement. In fact, Suncoast was not represented by counsel in the state court action when Plaintiffs filed a settlement agreement as assignees.[4] *See Bodden et al. v. Suncoast Shipping, LLC,* Case No.: 13-38537 [DE 1, 2, 3]. The unequivocal intent of that agreement was to allow Plaintiffs to pursue claims against the insurance agent for Suncoast, which they could not do without the default judgment Travelers obtained in federal court. *See Blumberg v. USAA Casualty Ins. Co.*, 790 So. 2d 1061 (Fla. 2001) (negligence claims against insurance agents do not accrue until the existence of coverage has been resolved). Plaintiffs deemed the declaratory judgment obtained by Travelers to be binding because they next sued Suncoast's insurance agent in the Southern District of Florida. *See Bodden et al. v. Suncoast Shipping and Frankel & Co., LLC*, Case No.: 1:17-cv-22337-MGC.

## V.     Plaintiffs' Remaining Arguments on *Uberimmae Fidei* and No Duty to Investigate

Plaintiffs claim in their response that the District Court that presided over the declaratory judgment made no factual findings when entering the default judgment in favor of Travelers which rendered the insurance policy void *ab initio*. This is erroneous. Plaintiffs' argument that "an insurer cannot accept premiums with knowledge, actual or constructive, of facts sufficient to avoid the policy" is equally misplaced. The Court did in fact make factual findings when it issued a default judgment. *See* [DE 15-2].

To be sure, "[t]he effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact…" *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). "A default judgment operates as an admission of the truth of the well pleaded allegations of the

---

[4] This court can make its own legal interpretation that when Plaintiffs filed, they filed as assignees.

pleading; it does not admit facts not pleaded, not properly pleaded, or conclusions of law." *Big Bang Miami Entertainment, LLC v. Moumina,* 137 So. 3d 1117, 1120-21 (Fla. 3d DCA 2014). "Fair inferences will be made from the pleadings but forced inference will not be made. The party seeking affirmative relief [in a default judgment] may not be granted relief that is not supported by the pleadings or by substantive law applicable to the pleadings." *Id. See also Bank of N.Y. Mellon v. Reyes*, 126 So. 3d 304, 307 (Fla. 2d DCA 2013); *Bd. of Regents v. Stinson-Head, Inc*., 504 So. 2d 1374, 1375 (Fla. 4th DCA 1987; *Ginsberg v. Lennar Fla. Holdings, Inc*., 645 So. 2d 490, 493 (Fla. 3d DCA 1994).

In the complaint in the declaratory judgment action against Suncoast, Travelers claimed that Suncoast had a duty to exercise utmost good faith when applying for and seeking the insurance from Travelers and that Suncoast did not disclose that it was not the true owner of the tug *Billy G*. Suncoast falsely represented that it was the owner and concealed the true owner's interest in the tug because the actual owner was unable and unqualified as an owner to have insurance. Travelers then stated that had Suncoast disclosed that it was not the true owner of the Tug *Billy G*, Travelers would not have been agreed to insure the tug and would not have issued the Policy. Plaintiffs herein brought suit against Frenkel for broker malpractice (sounding in breach of contract and negligence). *See* Corrected Second Complaint attached to Notice of Removal in *Bodden et al. v. Suncoast, and Bodden et al. v. Frenkel & Co., LLC*, Case No.: 1:17-cv-22337-MGC.

Here, the default judgment in this action served as an admission of truth in its well-pleaded allegations: Suncoast violated the doctrine of *uberrimae fidei* and did not act in the utmost of good faith when applying for insurance from Travelers by misrepresenting its ownership and failing to disclose the true owner. The Court then granted default judgment, stating that "it is admitted that Suncoast did not disclose the true identity of the tug *Billy G*, which was covered by the Policy." [DE 15-2]. The Court also held it was "admitted that Travelers would not have issued the Policy had Suncoast disclosed that it was not the owner of the *Billy G*, which means the misrepresentation to Traveler's decision to insure." Thus, Travelers was entitled to a declaratory judgment by default that the Policy was void *ab initio* based on a material misrepresentation. This is a finding of fact. Plaintiffs herein were strangers to the insurance application that Suncoast made and made misrepresentations to an insurer about. Neither Suncoast nor Plaintiffs were ever entitled to protection or indemnity coverage.

**WHEREFORE**, for the reasons stated above, TRAVELERS respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,

**McALPIN CONROY, P.A.**
80 S.W. 8th Street, Suite 2805
Miami, Florida 33130
(305) 810-5400 Tel.
(305) 810-5401 Fax
By: */s/ Joanne I. Nachio*
Michael E. Conroy, Esq.
Florida Bar No.:845434
MConroy@mcalpinconroy.com
Joanne I. Nachio, Esq.
Florida Bar No.: 113040
JNachio@mcalpinconroy.com
VMedina@mcalpinconroy.com

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 29, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

By: */s/ Joanne I. Nachio*
Joanne I. Nachio

# SERVICE LIST

Louis A. Vucci, Esquire
The Vucci Law Group, P.A.
SunTrust International Center
1 SE Third Avenue, Suite # 3020
Miami, FL 33131
Louis@thevuccilawgroup.com
*Counsel for Plaintiffs*

William G. Wolk, Esquire
Eaton & Wolk, P.L.
2665 South Bayshore Drive
Suite # 609
Miami, Fl 33133
wwolk@eatonwolk.com
cmartinez@eatonwolk.com
*Co-Counsel for Plaintiffs*